UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GERALD BOLOGNESE,

                          Plaintiff,         06-CV-0495-T

            v.                               **DECISION**
                                             **and ORDER**
MICHAEL O. LEAVITT, Secretary of the
U.S. Department of Health & Human Services

                          Defendant.
_____


## INTRODUCTION

        Plaintiff Gerald Bolognese ("Plaintiff") brings this action

pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b), seeking review of

a final decision of the Secretary of the United States Department

of Health and Human Services ("Secretary") denying his request

for a waiver of a surcharge imposed on his monthly Medicare Part

B premiums. Specifically, Plaintiff alleges that the decision of

Administrative Law Judge ("ALJ") James E. Dombeck denying his

request for a waiver was erroneous and not supported by

substantial evidence contained in the record and was not

supported by the applicable law.

        Plaintiff seeks reversal of the Secretary's ruling and such

other and further relief as may be just and proper. The Secretary

moves for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c) ("Rule 12(c)") on the grounds that ALJ Dombeck's decision

was supported by substantial evidence contained in the record.

Plaintiff cross-moves for judgment on the pleadings on the

grounds that the ALJ's decision was contrary to law, was not supported by substantial evidence, and resulted from biased decision making on behalf of the ALJ.

For the reasons set forth below, I find that the decision of the Secretary is supported by substantial evidence and is in accordance with applicable law. I further find that Plaintiff waived his bias claim by failing to raise it during the administrative proceedings. Therefore, I grant the Secretary's motion for judgment on the pleadings, and deny plaintiff's cross-motion for judgment on the pleadings.

## BACKGROUND

Plaintiff, born on January 20, 1943 (Tr. 19), was employed as a tire builder for Dunlop Tires, Inc. ("Dunlop Tires") from 1967 to 1991 (Tr. 19, 141). As a result of a back injury sustained by Plaintiff in the late 1980s, Dunlop Tires placed him on disability retirement effective February 1, 1991 (Tr. 19. 113). Upon his retirement, under the terms of the Goodyear Dunlop Tires North America Ltd. 1950 Pension Plan ("the Dunlop Plan"), Plaintiff became entitled to a basic pension benefit and a Temporary Disability Supplement (Tr. 19, 72, 172-73). Plaintiff also was entitled to continued health insurance coverage under the Dunlop Plan (Tr. 19). However, the Dunlop Plan provided that once a retired employee became eligible for Medicare coverage, the plan would pay secondary to Medicare, thereby covering only

the portions of medical bills not covered by Medicare (Tr. 22, 112). Once the Dunlop Plan became the secondary provider, it would pay the Medicare-eligible participant a "Special Medicare Benefit" in order to partially reimburse the participant for his or her Medicare Part B premiums (Tr. 75, 112, 114).

Plaintiff applied for Social Security disability benefits in 1991 (Tr. 142). In December 1992, following denial by the Social Security Administration and a subsequent appeal by Plaintiff, an ALJ awarded Plaintiff disability benefits retroactive to August 1991 (Tr. 19, 25, 142). When the Dunlop Plan learned that Plaintiff had become eligible for Social Security disability benefits, it prospectively terminated his Temporary Disability Supplement, effective February 1, 1993 (Tr. 73).

Under the Social Security Act, individuals under the age of 65, such as Plaintiff at the time he was awarded Social Security benefits, are eligible to enroll in Medicare Part A hospital insurance benefits once they have been entitled to Social Security disability benefits for 25 months. 42 C.F.R. § 406.12. Individuals entitled to enroll in Part A may also enroll in the Part B program. 42 C.F.R. § 407.10. Plaintiff became entitled to Medicare Part A and Medicare Part B supplemental medical insurance in August 1993 (Tr. 25, 109). See 42 C.F.R. § 406.12. He enrolled in Medicare Part A during his initial enrollment period, which ran from May 1, 1993, through November 30, 1993

(Tr. 25). He would have been automatically enrolled in Medicare Part B at that time, but he opted to decline enrollment in Part B (Tr. 25, 109, 129). The Dunlop Plan continued to pay on a primary basis for the medical services provided to Plaintiff until 2002 (Tr. 23).

Upon declining Part B coverage during the initial enrollment period, an individual may subsequently enroll during the "general enrollment period," see 42 C.F.R. § 407.(a)(2), which extends from January 1 through March 31 of each calendar year, id. § 407.15. By failing to enroll for Part B coverage after the expiration of the initial enrollment period, the Social Security Administration may require a Medicare applicant to pay a surcharge on the monthly Medicare premiums. See id. § 508.22. This surcharge is calculated by increasing the monthly premium by ten percent for each full twelve-month period between the close of the individual's initial enrollment period and the close of the enrollment period in which he enrolled. Id. §§ 408.22, 408.24(a).

Plaintiff enrolled in the Part B program on January 15, 2003 (Tr. 133), and his Part B coverage became effective on July 1, 2003 (Tr. 25, 110). Upon reviewing his application for the Part B program, the Social Security Administration determined that because Plaintiff had delayed his enrollment by a total of 112 months (from November 30, 1993, the last day of his initial

enrollment period, through March 31, 2003, the last day of the general enrollment period for 2003), his monthly premium would be increased by a 90 percent surcharge–ten percent for each period of twelve months of the delayed enrollment (Tr. 129-31).

Plaintiff requested reconsideration and an administrative hearing on the imposition of the surcharge. Plaintiff appeared and was represented by a paralegal at an administrative hearing before ALJ Dombeck on September 28, 2004 in Buffalo (Tr. 135). In a comprehensive and well-reasoned decision dated December 6, 2004, the ALJ denied Plaintiff's request for waiver of the surcharge (Tr. 16-26). Plaintiff made a timely request for review to the Medicare Appeals Council ("Appeals Council") (Tr. 6-13). The ALJ's decision became the final decision of the Secretary when the Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 31, 2006 (Tr. 1-2). On July 26, 2006, Plaintiff filed this action appealing the Secretary's decision.

### DISCUSSION

I.   **Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) and § 1395ff(b)(1)(A) grant jurisdiction to district courts to hear claims based on the denial of a request for waiver of a surcharge. 42 U.S.C. § 405(g) directs that when considering such a claim, the district court must accept the findings of fact made by the Secretary, provided that such findings are supported by substantial evidence in the

record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the court's scope of review to determining whether or not the Secretary's findings were supported by substantial evidence. See Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing court does not try a benefits case de novo). The court also is authorized to review the legal standards employed by the Secretary in evaluating the Plaintiff's claim. The court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted).

The Secretary asserts that the ALJ's decision is supported by the evidence in the record and is in accordance with the applicable law. Thus, the Secretary moves for judgment on the pleadings pursuant to Rule 12(c). Plaintiff cross-moves for judgment on the pleadings, claiming that the ALJ's decision is contrary to law, is not supported by substantial evidence, and is the result of biased decision making. Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review

of the pleadings, the court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

**II.  The ALJ's denial of Plaintiff's request for a waiver of the premium surcharge is supported by substantial evidence in the record.**

In order to waive the 90 percent surcharge applied to Plaintiff's monthly Medicare Part B premiums, Plaintiff would have to show that he qualifies for a special enrollment period, or that he is entitled to equitable relief under the applicable statute or regulations. Because Plaintiff failed to demonstrate eligibility for either, I affirm the ALJ's decision denying Plaintiff's request for a waiver of the 90 percent surcharge.

A.  <u>Plaintiff does not qualify for a "special enrollment period" under the applicable law.</u>

A special enrollment period is available to disabled individuals under the age of 65 if, at the time of their initial enrollment period, they were covered by a large group health plan, such as Dunlop Plan, by means of their "current employment status." 42 U.S.C. § 1395p(i)(1); 42 C.F.R. § 407.20. At the time of his initial enrollment period, Plaintiff was covered under the Dunlop Plan as a retiree, not as a current employee (Tr. 20). Therefore, the ALJ's determination that Plaintiff does not qualify for a special enrollment period under 42 U.S.C. §

1395p(i)(1) or 42 C.F.R. § 407.20 is in accordance with applicable law.

>    B.   Plaintiff does not qualify for equitable relief
>         under the statute or the regulations.

Equitable relief, including establishment of a special initial enrollment period or a special general enrollment period, as well as adjustment of premiums, is available to a Medicare Part B applicant if the applicant meets the statutory or regulatory requirements for such relief. See 42 U.S.C. § 1395p(h); 42 C.F.R. § 407.32.

Under the Social Security Act, equitable relief is available for a claimant whose "nonenrollment in [Medicare Part B] is unintentional, inadvertent, or erroneous and is the result of the error, misrepresentation, or inaction of an officer, employee, or agent of the Federal Government, or its instrumentalities . . . ." 42 U.S.C. § 1395p(h). See also 42 C.F.R. § 407.32. ALJ Dombeck correctly determined that Plaintiff's delayed enrollment in Medicare Part B was not attributable to any error, misrepresentation, or inaction of an officer, employee, or agent of the Federal Government or its instrumentalities (Tr. 22, 26). I find that there is substantial evidence in the record to support the ALJ's determination on this matter.

C.   Equitable relief is not available to Plaintiff
through any provision of the Social Security
Administration's  Program Operations Manual
System.

The Program Operations Manual System (the "POMS") is an
internal interpretative guideline issued by the Social Security
Administration. The POMS provides guidelines for instances when
the Social Security Administration might provide equitable relief
to a Medicare Part B applicant, such as granting a special
enrollment period or waiving or reducing a premium surcharge. See
POMS § HI 00805.320.

Plaintiff claims to qualify for equitable relief under
§ HI 00805.320 of the POMS which provides as follows:

A disabled beneficiary may allege he/she was
misinformed about whether [a large group
health plan (such as Dunlop Plan)] was the
primary payer of benefits. If . . . the
information alleged was given by an employee
or agent of the Federal Government . . . the
employer, or by the [large group health
plan], equitable relief may be granted to
correct the results of the incorrect
information.

POMS § HI 00805.320(1). However, even if Plaintiff met the
requirements for equitable relief set forth in the POMS, the POMS
provisions lack the force of law and create no
judicially-enforceable rights, and, therefore, Plaintiff may not
obtain the relief he seeks pursuant to the POMS. See Schweiker v.
Hansen, 450 U.S. 785, 789 (1981) (finding that a handbook for
internal use by Social Security Administration employees "has no

legal force, and . . . does not bind the [Social Security Administration]"); Binder & Binder PC v. Barnhart, 481 F.3d 141, 151 (2d Cir. 2007) (providing that "[e]ven if [an internal document of the Social Security Administration] were . . . part of the [POMS], it still would not constitute properly enacted policy or have the force of law."); Tejada v. Apfel, 167 F.3d 770, 775 (2d Cir. 1999) (recognizing that "the POMS guidelines have no legal force, and they do not bind the Commissioner." (citations omitted)); Edelman v. Comm'r of Soc. Sec., 83 F.3d 68, 71 n.2 (3d Cir. 1996) (noting that the "[POMS] regulations do not have the force of law."). See also Social Security Administration, POMS Disclaimer, https://secure.ssa.gov/apps10/poms.nsf/aboutpoms (last visited June 24, 2008) (stating that "[t]he POMS states only internal SSA guidance. It is not intended to, does not, and may not be relied upon to create any rights enforceable at law by any party in a civil or criminal action."). Accordingly, the POMS does not aid Plaintiff in establishing a claim for equitable relief. As ALJ Dombeck noted, the Social Security Act and the corresponding regulations do not extend equitable relief to a claimant whose delay in enrolling for Medicare Part B resulted from the error, misinformation, or inaction of a private sector, non-governmental source, such as Dunlop Tires or the Dunlop Plan (Tr. 35). See 42 U.S.C. § 1395p(h); 42 C.F.R. § 407.32. There is substantial evidence in the record to support the ALJ's finding that neither

Dunlop Tires nor the Dunlop Plan insurance providers are an instrumentality of the Federal Government.  Therefore, even if those entities did provide Plaintiff with incorrect information, their representatives cannot bind the Secretary.

Moreover, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's delayed Part B enrollment was not attributable to misinformation from Dunlop Tire, the Dunlop Plan, or any of either entities' agents or employees (see Tr. 26).  Plaintiff contends that the Dunlop Plan administrators misled and misinformed him by failing to inform him that he should have enrolled in Medicare Part B in August 1993, and that the Plan continued to pay as the primary insurer when it should have paid as a secondary insurer, thereby causing him to delay his enrollment. See Plaintiff's Cross-motion for Judgment on the Pleadings at 24.

Plaintiff's claim that the Dunlop Plan, under the provisions of its health benefits plan, was responsible for informing him of his need to enroll in Medicare Part B is not borne out by the evidence in the record. Plaintiff has failed to provide any evidence establishing that Dunlop took on the affirmative duty to notify plan participants as to when they were required to apply for governmental benefits. At the conclusion of the administrative hearing, the ALJ afforded  Plaintiff extra time to supplement the record with the contract, which Plaintiff claimed established the

Dunlop Plan's responsibility for informing Plan participants as to when they were required to apply for governmental benefits (see Tr. 37-45). Plaintiff, however, did not produce the contract, or any other evidence that would support his claim. Cf. Murphy v. Secretary of Health and Human Services, 62 F. Supp.2d 1104, 1108 (S.D.N.Y. 1999) (where Medicare claimant bears the burden of proof on a disputed issue, the lack of such proof constitutes "substantial evidence" on which an ALJ can base a denial.)

To further support his argument that Dunlop had the obligation to notify him as to when he was required to apply for Part B enrollment, Plaintiff, at the administrative hearing, introduced the written notice that he received from the Social Security Administration indicating that his Social Security Disability benefits had been granted on appeal.  (Exhibit 13, pages 2-6). Plaintiff claims that this document established that Dunlop knew of the Plaintiff's successful Social Security appeal, and that Dunlop should have known that the plaintiff eventually would become eligible for Medicare SMI thereafter.  The ALJ found (and it was not disputed) that Dunlop acknowledged receipt of the notification issued in December 1992, but also found that the plaintiff did not comply with Dunlop's request in 1993 for a copy of the award notice, thus preventing Dunlop from determining when its obligation to act as a primary payer ceased.  (Tr. 8)  The ALJ concluded that Dunlop continued to act as a primary payer "due in substantial part

to [plaintiff's] failure to provide the Plan with necessary information that had been requested." (Tr. 8). Although the plaintiff was notified that he was being awarded Social Security Disability benefits in late 1992, he failed to provide Dunlop with the information it requested, and yet insisted that Dunlop should have notified him of his obligation to enroll for Medicare Part B.

Accordingly, given the lack of evidence that would support Plaintiff's claim that the Dunlop Plan had a responsibility to notify him when he should enroll in Medicare Part B, I find that the ALJ's denial of equitable relief is supported by substantial evidence in the record and is in accordance with applicable law.

**III.**  **Plaintiff waived his bias claim by failing to raise it at the administrative level.**

In Plaintiff's cross-motion for judgment on the pleadings, he alleges biased decision making on behalf of the ALJ. The record indicates, however, that Plaintiff failed to raise the bias claim during the hearing or in his request for review before the Appeals Council (see Tr. 6-13). Failure to raise a bias claim at the administrative level constitutes a waiver of the right to object to conduct of the ALJ. See Long v. Commissioner of Social Security, 375 F. Supp. 2d 674, 678 (W.D. Tenn. 2005); Ward v. Shalala, 898 F. Supp. 261, 269 (D. Del. 1995) ("[b]ecause [the plaintiff] brought up the bias claim for the first time before this Court she is deemed to have waived her bias claim"). Therefore, I find that

Plaintiff waived his bias claim by failing to raise it at the administrative level.

CONCLUSION

For the reasons set forth above, I conclude that the ALJ's decision is supported by substantial evidence in the record and is in accordance with applicable law. I further find that Plaintiff waived his bias claim by failing to raise it at the administrative level. Therefore, I grant the Secretary's motion for judgment on the pleadings, and deny Plaintiff's cross-motion for judgment on the pleadings. Plaintiff's Complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.


S/Michael A. Telesca
_____
    MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          June 26, 2008